**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **HENRI MORRIS** | § | **Civil Action No. _____** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| **WARDEN OF FCI BEAUMONT LOW,** | § | |
| **IN HIS INDIVIDUAL CAPACITY,** | § | |
| **AND WELLPATH, LLC** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE COURT:

COME NOW, Plaintiff, HENRI MORRIS, and files this his Verified Original Complaint, complaining of the UNITED STATES OF AMERICA, THE WARDEN OF FCI BEAUMONT LOW, and WELLPATH, LLC, Defendants herein, and for cause of action would show the Court the following:

**I.**
**PARTIES**

1. Plaintiff, HENRI MORRIS, (hereinafter referred to as "Morris"), is an individual and citizen of the State of Texas.

2. Defendant, THE UNITED STATES OF AMERICA, administers the Federal Bureau of Prisons, which is in turn responsible for the administration of the Low Security Federal Correctional Institution, in Beaumont, Texas (hereinafter referred to as "FCI Beaumont").

1

3.   Defendant, the WARDEN OF FCI BEAUMONT LOW, is an individual and citizen of the State of Texas.

4.   Defendant, the WELLPATH, LLC, (hereinafter also referred to as "Wellpath") is a foreign, (Non-Texas), limited liability company, doing business and registered in Texas, and may be served with process, by serving its registered agent, Corporate Creations Network, Inc., at 5444 Westheimer #1000, Houston, TX 77056.

## II.
## SUBJECT MATTER JURISDICTION

5.   This is a cause of action under the Federal Tort Claims Act, ("FTCA"), and within the jurisdiction of the United States and this Honorable Court, in accordance with 28 U.S.C. §§ 2674-75.

## III.
## VENUE

6.   Under 28 U.S.C. §§ 1391 (d) & 1391(e)(1)( C) (d), venue is appropriate in the Southern District of Texas, Houston Division, as the county where the Plaintiff resides and where Wellpath has minimum contacts.

## IV.
## FACTS

7.   On or about 2008, due to various dental issues, Morris' dentist at that time, (Dr. H. Marblestone, hereinafter referred to as "Dr. Marblestone"), filed down four of his front teeth, in order to replace them with caps. After inserting the caps, Dr. Marblestone gave Morris a plastic rubber mouth-guard, (the "Mouth-guard"). Dr. Marblestone told Morris it was important he wears the Mouth-guard over his teeth every night before going to sleep, in order to prevent the grinding of Morris' teeth and therefore eroding the caps. See photograph with an example of a

mouth-guard with the accompanying case, similar to the one owned by Morris, attached hereto as **Exhibit 1**. Dr. Marblestone stated that the grinding of the teeth could cause the tooth enamel to quickly erode the caps. Morris used the Mouth-guard every night thereafter, to include over one year during the time he was detained in the BOP Houston Detention Center and awaiting trial, and until his transfer to the BOP Federal Correctional Institution, that is known as "FCI Beaumont Low," in Beaumont, Texas, (hereinafter "FCI Beaumont").

8.      A few weeks after his transfer to FCI Beaumont, Morris' property from the Houston Detention Center arrived and he was called to the Receiving and Discharging Department, (hereinafter "R&D Department"), to collect it.  The boxes with Morris' property were all opened in his presence by an officer, who then also checked the contents. When the officer found the Mouth-guard, he refused to allow Morris to have it.  He based his reasoning on a document that he showed Morris titled "Inmate Personal Property List Authorized for Retention and Transfer Between Institutions."  A true and correct copy of the aforementioned document, bearing the title Authorized Inmate Personal Property, is attached hereto as **Exhibit 2**. The officer told Morris that since the mouth-guard was not listed as an approved item in the document, it was, therefore, considered to be contraband. See also a true and correct copy of the Federal Regulations document regarding Inmate Personal Property that was provided to Morris, attached hereto as **Exhibit 3**. The officer therefore confiscated both the Mouth-guard and its accompanying plastic case.

9.      Morris immediately complained about his Mouth-guard's confiscation to FCI Beaumont's Medical Services, and after a long period of time, they eventually gave Morris approval to have it returned. However, since so much time had elapsed since its confiscation, the Mouth-guard could not be found in the R&D Department and was thus never given back to Morris.  Further,

3

FCI Beaumont's Health Services would not make another Mouth-guard to replace the one it "lost."

10.    Prior to his incarceration in the FCI Beamont, Morris had never had a problem with his caps, nor did he have any problem with them while incarcerated in Houston. It was only as a direct result of the FCI Beaumont's guard's refusal to allow him to have the Mouth-guard that his teeth were ground-down during his sleep. This directly resulted in all four caps breaking off one by one, during the next few years while incarcerated in Beaumont. See the true and correct copy of photographs of Morris' caps that had broken off his teeth**,** attached hereto as **Exhibits 4 and 5**. As a result, Morris had four (4) front teeth missing in his mouth. See a true and correct copy of a photograph of Morris, with four (4) of his front teeth missing, attached hereto as **Exhibit 6**.

11.    The front upper crown on Morris' lateral incisor tooth, (hereinafter "Tooth Number 10"), was the first to break off after having been worn down by Morris, by virtue of grinding his teeth while asleep. Morris immediately went to the prison clinic dentist in FCI Beaumont who apologized and told him that although the broken tooth was big enough to glue back on, he was not allowed to have any strong adhesive in the prison complex.  He then said that he would try using whatever glue he had and was allowed to use, however he added that the adhesive would probably only last a short while.

12.    The crown did in fact come off again shortly thereafter, and when Morris returned to the dentist, Morris was told that the only solution would be for him to pull the remains of the tooth, since he was not allowed to do any cosmetic work, such as crowns or bridges, on inmates. Morris then asked whether he could go to an outside dentist to have a new crown made and

inserted, to which the dentist responded that the BOP also did not allow outside dentists to replace or create crowns for inmates. The dentist therefore refused to refer Morris to an outside specialist and again stressed that the only option was to have him extract the remains of the tooth.

13.    Morris then asked, what would become of the missing tooth in his mouth, to which question the dentist replied that it would have to remain a gap since the BOP did not allow implants to be made for inmates. Morris, realizing that he would never be able to have another crown inserted onto Tooth Number 10 if it was completely extracted, refused to have the tooth removed. Thereafter, one-by-one, the three additional crowns broke off due to their being ground down during Morris' sleep. Knowing he would receive the same inadequate treatment for his other three teeth with the broken caps, and considering that some of the broken pieces of the crowns were very small and even more difficult to be glued back in place, Morris did not return to the prison dentist to have them repaired.

14.    Towards the end of 2021, Morris was transferred from FCI Beaumont, to the Federal Correctional Institution in Butner, North Carolina. Upon his arrival there, Morris went to the BOP dentist and showed him all of the broken crowns.  Morris also asked the prison dentist whether there was something that he could do for any of his broken crowns. The prison dentist confirmed that due to its larger size, only the crown on Tooth Number 10 had a chance of being glued. He also stated, however, that the glue may not last since he too was not allowed by the BOP to have a strong enough adhesive. He then used his available adhesive on tooth No. 10 but the crown again came off the very next day. The dentist also confirmed that he was not allowed to do any crown work, nor could he refer Morris to an outside dentist.

15. As a result of the BOP's negligence, if not intentional acts and omissions, Morris lost approximately fifty (50) pounds, as he could not chew and eat all his food. Additionally, since his release from prison in January of 2022, Morris paid $11,788.000 to a dentist in Houston to have his four (4) damaged teeth repaired. The BOP was negligent, if not intentionally inflicting a cruel and unusual punishment on Morris, for the following reasons: (1) the BOP's initially refused to allow Morris to have and use the Mouth-guard; (2) subsequently, the BOP "lost" Morris' Mouth-guard, after FCI Beaumont Medical Services gave him permission to have it and use it; (3) the BOP failed to replace the Mouth-guard that it "lost;" and (4) subsequently, the BOP refused to provide Morris with adequate medical/dental care, even for a medical problem that the BOP itself created, resulting in Morris' unnecessary suffering, as evidenced in part by his losing fifty (50) pounds, as the prison records may show, if comparing Morris' weight when he was admitted to the FCI Beaumont Low, to the Morris' medical records when admitted in the Federal Correctional Institution in Butner, North Carolina.

16. But for the BOP's acts and omissions, Morris would not have ground his teeth in his sleep, and he would not have lost the crowns which he had for years, without any problems.

## V.

### FIRST CLAIM FOR RELIEF

17. Plaintiff incorporates the above paragraphs as if set forth at length. As described herein, as a result of the BOP's acts and omissions, and overall negligence, as set forth above, Defendant, the United States subjected Plaintiff to risk of harm and injury, and suffered the same, by refusing to allow him to use the Mouth-guard, then giving him permission to use the

same after months passing by, then by allowing the Plaintiff's Mouth-Guard to be "lost," and finally by refusing to provide Plaintiff with the appropriate medical care.

## VI.

## SECOND CLAIM FOR RELIEF

18. Plaintiff incorporates the above paragraphs as if set forth at length. As described herein, as a result of Defendant FCI Beaumont Warden's acts and omissions as set forth above, Plaintiff was placed at risk of harm and injury, and suffered the same, first by refusing to allow him to use the Mouth-guard, then giving him permission to use the same after months passing by, then by allowing the Plaintiff's Mouth-Guard to be "lost," and finally by refusing to provide Plaintiff with the appropriate medical care.

## VII.

## THIRD CLAIM FOR RELIEF

19. Plaintiff incorporates the above paragraphs as if set forth at length. Pleading independently or in the alternative, as described herein, as a result of Defendant Wellpath, LLC's acts and omissions, Plaintiff suffered harm and injury, by Defendant Wellpath, LLC's refusal to provide Plaintiff with the appropriate medical care.

## VIII.
## DAMAGES

20. As a result of the Defendant's acts and omissions as set forth above, the Plaintiff has incurred damages. More specifically, Plaintiff HENRI MORRIS seeks damages in the amount in excess of $11,788.00 for physical injuries, and $50,000.00 in additional damages for pain and suffering, and punitive damages. A true and correct copy of the proposed treatment to repair Morris' teeth, is attached hereto as **Exhibit 7**. A true and correct copy of the invoice for Morris' dental repairs is attached hereto as **Exhibit 8.**

7

## IX.
## STATUTORY COMPLIANCE

21.     Plaintiff has complied with 28 U.S.C. § 2675.Claimant has first presented his claim to the BOP and his claim has been finally denied, in writing.   A true and correct copy of the letter sent to Morris, by Jason A. Sickler, Regional Counsel for the U.S. Department of Justice, Federal Bureau of Prisons, regarding the denial of Morris' claim, is attached hereto as **Exhibit 9**.

## X.
## JURY DEMAND

22.     Plaintiff hereby asserts his right to a trial by jury under the United States Constitution and makes this demand for trial by jury in accordance with Federal Rules of Civil Procedure 38 and 39.

## XI.
## PRAYER FOR RELIEF

23.     WHEREFORE, PREMISES CONSIDERED, Plaintiff HENRI MORRIS prays for judgment against the Defendants for:

1. Summons be issued against Defendants;

2. Judgment in favor of plaintiff against Defendants for the amount of Plaintiff's damages, together with post-judgment interest, as well as the cost and disbursements of this action; actual damages as plead for herein;

3. For such other and further relief as may be just and appropriate.

Respectfully submitted,

DABNEY PAPPAS

By:   /s/ Gus E. Pappas
    Gus E. Pappas
    State Bar No. 15454850
    gus@dabneypappas.com
    1776 Yorktown, Suite 425
    Houston, Texas 77056
    713-621-2678 Telephone
    713-621-0074 Facsimile

ATTORNEY FOR PLAINTIFF
HENRI MORRIS